Michelle Smith

1901 W. Madison Street 1339

Phoenix, AZ 85009

6025812400

Mic2298879@gmail.com



FILED ___ LODGED
___ RECEIVED ___ COPY

APR 0 6 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT DISTRICT OF ARIZONA

Michelle Smith,
Plaintiff,

v.

Credit Union West, an Arizona credit union,
Defendant.

Case N  CV-26-2328-PHX-DWL

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michelle Smith ("Plaintiff"), proceeding pro se, for her Complaint against Defendant

Credit Union West ("CUW" or "Defendant"), alleges as follows:

## I. JURISDICTION AND VENUE

1. This action arises under federal law, including 42 U.S.C. § 1981.

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred within the District of Arizona, and Defendant conducts business in this District.

## II. PARTIES

4. Plaintiff Michelle Smith is an individual residing in Surprise, Arizona.

5. Defendant Credit Union West is a state-chartered credit union with branch locations throughout Arizona and its principal place of business in Glendale, Arizona.

## III. FACTUAL ALLEGATIONS

6. Plaintiff is a member of Credit Union West and holds a personal checking account governed by CUW's Consumer Membership Account Agreement and Disclosures ("Membership Agreement").

7. In June 2025, Plaintiff attempted to deposit multiple valid Western Union money orders into her CUW checking account at the CUW branch located in Surprise, Arizona.

8. The money orders were lawfully purchased by Plaintiff, properly endorsed, and accompanied by receipts verifying their authenticity.

9. Western Union's written instructions permit endorsement of money orders for deposit when marked accordingly, which Plaintiff followed.

10. Despite this documentation, the Surprise branch manager refused to accept the deposits.

11. Plaintiff was not offered standard verification procedures, extended holds, or escalation through ordinary deposit protocols.

12. Instead, Plaintiff was told that acceptance of the money orders was prohibited by unspecified "internal policy" that Plaintiff was not permitted to review.

13. The refusal was abrupt, discretionary, and unsupported by any written policy provided to Plaintiff.

14. Shortly thereafter, Plaintiff traveled to a different CUW branch in Peoria, Arizona.

15. At the Peoria branch, CUW accepted the identical money orders and deposited them into Plaintiff's account using a standard hold procedure.

16. This demonstrated that CUW possessed mechanisms to safely process the same transaction previously refused.

17. Following Plaintiff's filing of complaints with the Better Business Bureau and Arizona regulatory agencies, a CUW district-level representative contacted Plaintiff.

18. During that conversation, the representative reviewed the publicly available Membership Agreement with Plaintiff and asserted that CUW possessed discretion to accept or reject third-party instruments.

19. However, the cited provisions do not grant unfettered or arbitrary discretion to deny deposits absent objective risk factors.

20. CUW later confirmed in writing via its online secure messaging system that third-party deposits are reviewed by management, typically placed on hold, and that no specific written policy governing such deposits is published on CUW's website.

21. At no point did CUW identify a concrete security concern, fraud indicator, or negotiability defect specific to Plaintiff's money orders.

22. Plaintiff's account history, deposit patterns, and transactional behavior were not cited as factors in the refusal.

23. The Surprise branch's decision relied solely on subjective judgment rather than uniform application of written standards.

24. The inconsistent treatment between branches caused Plaintiff significant distress, inconvenience, and disruption in meeting essential financial obligations.

25. At the Surprise branch, no review was conducted of Plaintiff's account history, account status, deposit patterns, or monthly income activity prior to the refusal. No attempt was made to assess risk through ordinary banking safeguards such as verification holds, documentation review, or escalation to standard collection procedures.

26. By contrast, at the Peoria branch, a branch manager reviewed Plaintiff's account and accepted the same money orders subject to a standard seven-day hold for verification, demonstrating that Defendant had neutral, non-discriminatory means available to address any perceived risk.

27. The Peoria branch manager who applied standard verification procedures is also Black, while the Surprise branch manager who refused service without conducting any account review is white. Plaintiff does not allege discrimination based on the race of any individual employee; rather, this contrast underscores Defendant's inconsistent and discretionary enforcement of deposit practices.

28. During Plaintiff's interaction at the Surprise branch, the branch manager stated—on an audio recording—that she did not wish to "take the risk" of processing the money orders due to potential fraud concerns, despite Plaintiff presenting proof of purchase, the original money orders, and attached receipts verifying their authenticity.

29. Plaintiff further explained that the money orders had been purchased for rent payment and that her property management company had changed after issuance. Nevertheless, the Surprise branch manager refused to accept the deposits and declined to apply standard verification procedures or a temporary hold, basing the decision solely on subjective risk avoidance rather than any identified defect, regulatory prohibition, or written policy requirement.

## IV. DISCRIMINATION IN CONTRACTUAL RELATIONS (42 U.S.C. § 1981)

25. Plaintiff incorporates paragraphs 1–24 by reference.

26. Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens.

27. Plaintiff is a member of a protected racial class.

28. Plaintiff sought to exercise contractual rights associated with her CUW account, including deposit services.

29. Defendant interfered with Plaintiff's contractual rights by refusing to accept valid deposit instruments.

30. The refusal was based on discretionary, subjective criteria unsupported by written policy.

31. Defendant applied inconsistent standards across branch locations.

32. Such discretionary enforcement permits and facilitates discriminatory treatment.

33. Courts recognize that subjective "risk" determinations, when unsupported by objective standards, may constitute unlawful discrimination. See Brown v. JPMorgan Chase Bank, 999 F. Supp. 2d 1258 (S.D. Ala. 2014); Mays v. Wells Fargo Bank, 2021 WL 1221070 (E.D. Cal. Mar. 31, 2021).

34. Defendant's proffered explanations are pretextual and inconsistent with its own practices.

35. Defendant's conduct interfered with Plaintiff's right to contract on equal terms.

## V. DAMAGES

36. As a direct and proximate result of Defendant's actions, Plaintiff suffered: a. Economic harm; b. Emotional distress; c. Loss of dignity and equal treatment; d. Out-of-pocket expenses; e. Other consequential damages.

37. Defendant acted with reckless indifference to Plaintiff's federally protected rights.

## VI. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff;

B. Award compensatory damages, including emotional distress damages, in an amount to be determined at trial;

C. Award punitive damages;

D. Award costs of suit and allowable fees;

E. Grant such further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Michelle Smith

Plaintiff, Pro Se

Date: 4/1/2026